[Civ. No. 3872. Fourth Dist. Nov. 17, 1949.]

MARILYN ROSE, Respondent, v. COUNTY OF ORANGE, Appellant.

Forgy, Reinhaus & Forgy for Appellant.

Joseph Scott, Drumm & Drumm, J. Howard Ziemann and John R. Kent for Respondent.

BARNARD, P. J.—In this action for damages, arising from an automobile accident, the defendant county appeals from a judgment in favor of the plaintiff and also from an order denying its motion for a judgment notwithstanding the verdict of the jury.

The accident happened in the community of Westminster at the "T" intersection of 13th Street, a county road, with Huntington Beach Boulevard, a through state highway. The highway runs north and south, having an 18-foot concrete pavement with a white line in the center, and oiled shoulders on either side. An open ditch runs along the east side of this highway. The evidence is conflicting as to the distance between the east edge of the pavement and the beginning of the slope of the ditch. Two witnesses for the respondent testified that this distance was about a foot while a state highway patrolman testified that it was approximately 10 feet. Thirteenth Street comes in from the west, dead-ending there, and does not cross the highway or the ditch. It is approximately 30 feet wide and has an oiled surface. For years a stop sign had stood on 13th Street where it entered the highway. Two witnesses testified that this stop sign had been lying on the ground for about a week before the accident, while a highway patrolman, who arrived 35 minutes after the accident occurred, testified that it was then in place.

The respondent and her husband lived about a mile from this intersection, in the house in which he was born. Shortly before 7 o'clock on the evening of December 14, 1946, they left home to go to Santa Ana, the husband driving the automobile. Respondent and her husband occupied the front seat and two young men sat in the rear seat. It was an extremely foggy night and very difficult to see even 15 feet ahead of the automobile. However, they successfully turned five corners within about a mile, and then stopped to pick up a young lady who lived on 13th Street, about two blocks west of this intersection. She got into the rear seat of the automobile and respondent's husband drove on easterly toward this intersection. He testified that he traveled 10 to 15 miles per hour; that "We were all trying to peek out and see where we were at"; that he did not see any stop sign at the entrance to the

highway although he knew that there had been one there as long as he could remember; that he did not see any white lines on the pavement; and that "I knew we were coming close to Huntington Beach Boulevard, but I didn't have any warning." He drove on across the highway and into the drainage ditch east of the highway, his wife being thrown against the windshield and receiving the injuries in question.

The appellant first contends that the evidence is not sufficient to support the verdict since there is no evidence of any dangerous or defective condition on 13th Street itself, within the meaning of the Public Liability Act [Stats. 1923, p. 675; 2 Deering's Gen. Laws, Act 5619], under which this action was brought. It is argued that the evidence discloses no ditch or other hazardous condition within the actual confines of 13th Street; that any dangerous condition appeared only after a traveler had left 13th Street and entered the state highway; that any duty with respect to remedying such a condition or giving warning thereof rested on the State of California; that the duty of the county did not extend beyond the boundaries of 13th Street; and that the respondent county may not be held responsible for a dangerous and defective condition which thus existed on a state highway. Not only does the general situation involve questions of fact, but it is rather well established that such a county or public agency has a duty to warn persons lawfully using its streets of a dangerous condition which exists, even if that condition was not created by it or consisted of something which was not within its control. (*Shea* v. *City of San Bernardino,* 7 Cal.2d 688 [62 P.2d 365] ; *Sandstoe* v. *Atchison, T. & S. F. Ry. Co.,* 28 Cal.App.2d 215 [82 P.2d 216] ; *Rippe* v. *City of Los Angeles,* 50 Cal.App.2d 189 [123 P.2d 47].) It cannot be held as a matter of law that no duty rested on the appellant to give some warning of the condition which here existed. Whether any warning was here given and whether an ordinary stop sign, if it was there, was sufficient under the circumstances presented questions of fact rather than of law.

It is next contended that if any duty rested on the appellant, to give a warning of this dangerous condition which was outside of 13th Street, it should be held as a matter of law that the stop sign which had been erected at this intersection was adequate for this purpose; that it was not shown that any responsible official of the county had actual notice that the sign was down; and that the evidence is not sufficient

to impute constructive knowledge of such fact. There was evidence that this stop sign was down for a week, and possibly more, before the accident; that meetings had been held to protest the dangerous situation caused by this ditch; that this matter had been called to the attention of the supervisor of that district; that the supervisor and the road foreman were familiar with the conditions along this main highway; and that one or both of them was frequently there. Factual questions appear and it cannot be held, as a matter of law, that the conditions and length of time involved were not sufficient to put the responsible officials upon inquiry.

In this connection it is argued that the purpose of such a stop sign is to give warning in such a case as this, and that this purpose was adequately accomplished since the driver of this car had lived in this vicinity most of his life, knew that this was a state highway protected by stop signs, knew of the existence of the ditch, knew of the fog condition, and knew that he was near the intersection. From a factual standpoint this argument is very persuasive. The driver of this car not only was thoroughly familiar with this intersection and its surroundings but, under fog conditions which the witnesses testified remained the same, he had successfully located five other street intersections and made five successive turns within about a mile. However, while moving very slowly during the last two blocks, after picking up the other young lady, and knowing that he was "coming close to Huntington Beach Boulevard," he was, according to his testimony, unable to see the house or the white picket fence which were near the intersection, and was unable to see the different pavement on the highway or to see the white line along its center. If he did not see these things as he entered the highway it seems improbable that he would have observed any warning signs which the appellant might reasonably be expected to have provided. As a practical matter, it would reasonably seem that his attention must have been diverted by something other than the fog, a condition which had not been sufficient to prevent his seeing and making the turns onto several streets immediately theretofore. While this situation seems probable, some of the evidence and a part of the inferences are to the contrary, factual questions appear, and it cannot be held as a matter of law either that an adequate warning was provided or that he was guilty of contributory negligence. This is a case where the trial judge might well have, and the record indicates that he should

have, granted a new trial. Not having done so, this court is bound by the familiar rules governing questions of fact.

It is further contended that two instructions given were prejudicial. These instructions read as follows:

"Ordinarily, a dangerous or defective condition of a street, heretofore defined by me, must be situated within the street itself. There may be, however, situations where the source of danger, although situated outside the street, is of itself so direct a menace to travel within the street, that the failure to employ available protective or remedial measures will be regarded as a lack of reasonable repair or reasonable care for the safety of travelers along said street."

"It is the duty of a city or county to warn persons lawfully using one of its streets that a dangerous condition exists, even if that condition was not created by the city or county and is beyond its control."

It is contended that these instructions were inapplicable to the facts in this case, rather than that they are incorrect statements of the law. As hereinbefore stated, a duty rested upon the appellant to give some warning of the dangerous condition which here existed. These rules of law had a material bearing on the questions of fact which were necessarily submitted to the jury. Neither error nor prejudice appears in this connection.

The judgment and order appealed from are affirmed.

Griffin, J., and Mussell, J., concurred.