[Civ. No. 6432.   Fourth Dist.   Sept. 22, 1960.]

JULIE E. SALE, as Administratrix, etc., Respondent, v.
THE COUNTY OF SAN DIEGO, Appellant.

Henry A. Dietz, County Counsel, McInnis, Focht & Fitzgerald and James L. Focht, Jr., for Appellant.

Schall, Fitzwater & Nielsen, Schall, Nielsen & Boudreau and Leland C. Nielsen for Respondent.

GRIFFIN, P. J.—A jury rendered its verdict against defendant and appellant county of San Diego in favor of plaintiff and respondent Edgar P. Sale, then aged about 55 years, in an action arising out of an injury which occurred about 3 p.m. on September 14, 1957, while plaintiff was crossing Cottonwood Creek and Fifth Street in Encinitas at a place close to where the creek discharges on the ocean beach. At that point Fifth Street was a little-used secondary road with a concrete surface which contained a dip at its intersection with Cottonwood Creek, in which dip water was always present. A plank was placed on the outer edge of the concrete roadway for use by pedestrians in crossing the dip and the water course formed thereby. Mr. Sale has since died from a heart condition, and the appeal is now being maintained by his substituted representative, Julie E. Sale. Plaintiff presented a claim to the county under the so-called Public Liability Act, section 53051, Government Code, which counsel for defendant admitted was legally sufficient.

The facts show that plaintiff, who was a civil service employee (painter) at Camp Pendleton, earning about $103 per week, gross, was walking across a wooden plank, about 10 feet in length, about 10 inches in width and four inches thick, which rested on two 4 by 4 planks. This plank had been placed across the dip. Plaintiff was carrying a wooden box of dirt and

Dichondra weighing about 20 pounds. In some manner plaintiff missed his footing and fell. He suffered a broken hip. He testified that some green algae or moss was on the plank and caused his left foot to slip and that he threw his right foot into the water to brace himself and he "spread-eagled" and he heard a bone crack. On cross-examination he stated that he did not know whether he slipped or the plank tilted. He alleged in his verified complaint that water had been permitted to accumulate at the intersection in the street; that it was traveled by citizens of the county; the narrow plank walkway had been placed there and maintained by defendants county and Totilas in a negligent and unsafe manner; that the plank tipped and that it had been dry but a passing car had just splashed water on it and plaintiff was violently thrown on the roadway. The claim against the county alleged plaintiff's injuries were the result of a dangerous and defective condition of a public work, to wit, Fifth Street where Cottonwood Creek crosses it. The cement roadway and the waters in the street had accumulated a green growth of algae. Ten days after the accident the plank was found to be slippery when wet. Water from the creek and processed effluent from the Encinitas Sanitation Plant had been running or standing in this creek for some 10 years before the accident, which water varied in width from three to four feet to 16 feet. On the day of the accident the water in its deepest place was about 4 inches. Plaintiff's wife testified that her husband walked across the board to the middle of it; that she followed him; that she slipped but did not fall off it because she held on to him and he then fell. Another witness stated that Mr. Sale was carrying the box, stepped on the plank about two or three steps, "missed his footing and slid to his knees" and went down, and Mrs. Sales was back of him. The person who placed the plank there was not identified, although it was indicated that it was placed there by Mrs. Totilas who owned the property where plaintiff was taking the box and who was a party defendant in this action until dismissed out of it. The county had received notification the previous year that the mail carrier in the area, on foot, was unable to cross Cottonwood Creek at its intersection with Fifth Street by reason of the volume of water. The mail carrier testified that for more than a year he crossed this water; that there was a green growth of algae on the surface of the cement under the water, making it "very slick," and that he had several close calls and on many occasions he had lost his balance but never fell. Counsel con-

ceded at the trial that the county had notice of the condition, without admitting that said condition was a dangerous and defective condition. Defendant county stipulated that Fifth Street at its intersection with Cottonwood Creek was a public street under the control of and maintained by the County. It also admitted receiving letters addressed to the county supervisor of that district from the postmaster of Encinitas, calling attention to the fact that his mail carrier was unable to cross Cottonwood Creek at Fifth Street by reason of the volume of water and speaking of the feasibility of building a footbridge at that location. These letters were referred to the county road department as to the feasibility of making an improvement in the area. It denied installing the plank on which plaintiff slipped or fell. It admitted the condition had been called to its attention by Mrs. Totilas and inspection was made by the road superintendent and the subject of a footbridge was presented to the budget committee in 1957-1958 and no action was taken.

Defendant, on this appeal, claims first that the evidence fails to establish liability under the Public Liability Act, section 53051, *supra,* which reads as follows:

"53051. [INJURIES FROM DANGEROUS OR DEFECTIVE CONDITION OF PUBLIC PROPERTY, BASIS OF LIABILITY]

"A local agency is liable for injuries to persons and property resulting from the dangerous or defective condition of public property if the legislative body, board, or person authorized to remedy the condition:

"(a) Had knowledge or notice of the defective or dangerous condition.

"(b) For a reasonable time after acquiring knowledge or receiving notice, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition."

Defendant argues that plaintiff was not injured as the result of a dangerous or defective condition of public property, but that he was injured while crossing a creek on a plank set by unidentified private individuals and the defendant county's failure to build a footbridge across the creek is not a basis for liability under said section. Citing 2 Witkin, Summary of California Law, 7th edition, 1205, to the effect that liability is not imposed for the negligent failure to install property (citing *Perry* v. *City of Santa Monica,* 130 Cal.App.2d 370, 372 [279 P.2d 92], which held that the governmental immunity which a city enjoys as a state agency can be taken away only

by legislative enactment; that the Public Liability Act was not enacted for the purpose of protecting those who come upon city streets, but only those who sustain injuries by reason of a "dangerous or defective" condition; that a city is not an insurer of the safety of travelers; and that it is required only to exercise ordinary care to maintain its streets in a reasonably safe condition for those using them [citing cases].) In this connection, defendant also cites *Hoel* v. *City of Los Angeles,* 136 Cal.App.2d 295 [288 P.2d 989]; *Goodman* v. *Raposa,* 151 Cal.App.2d 830 [312 P.2d 65]; *Ross* v. *Atchison T. & S. F. Ry. Co.,* 141 Cal.App.2d 178 [296 P.2d 372]; *Belcher* v. *City & County of San Francisco,* 69 Cal.App.2d 457 [158 P.2d 996]; *Stang* v. *City of Mill Valley,* 38 Cal.2d 486 [240 P.2d 980]; *Seybert* v. *County of Imperial,* 162 Cal.App.2d 209 [327 P.2d 560].

Plaintiff argues that the evidence sufficiently shows that a dangerous and defective condition of public property was a proximate cause of the injuries in question. Citing *Rowland* v. *City of Pomona,* 82 Cal.App.2d 622 [186 P.2d 447], authored by Justice McComb, where a judgment in favor of the plaintiff was affirmed on appeal when plaintiff had parked his automobile along the street and slipped in moss and slime which had accumulated in the gutter, while attempting to step toward the sidewalk. Waste irrigation waters had flowed down the street and gutter for many months prior to the happening of that accident. The court said the question was:

"*Did the evidence show that defendant had permitted a dangerous condition to exist in its street under the Public Liability Statute of 1923?* . . . This question must likewise be answered in the affirmative. The evidence as heretofore stated discloses that defendant had permitted waste water to run along the east side of San Antonio Avenue and that deposits of mud, vegetable matter, moss and slime had accumulated in the gutter. There was likewise evidence that other accidents had occurred at the same place. Testimony to this effect constituted some evidence that the condition there existing was dangerous." (Citing *Barker* v. *Los Angeles,* 57 Cal. App.2d 742, 747 [135 P.2d 573] and *Bauman* v. *San Francisco,* 42 Cal.App.2d 144, 153 [108 P.2d 989].)

■ Respecting the proximate cause of the accident involving the foot plank placed there by others and the maintenance of the dangerous and slippery condition of the cement street under the water and the polluted condition of the water itself where passing cars would splash it upon the foot plank,

it is held in *Jones* v. *City of South San Francisco,* 96 Cal.App. 2d 427, 428 [216 P.2d 25]:

"Where two independent actors are involved in causing an injury, whether the act of the second actor breaks the chain of causation and makes the act of the first actor a remote cause, or whether both acts concurred in causing the injury, so that both are proximate causes, are normally questions for the trier of fact, where the act of the second actor is reasonably foreseeable."

The court there said, at page 438:

"In the instant case the city negligently permitted a large pool of water to exist, making the sidewalk area and half the street impractical for pedestrians to use. The city knew that a large number of pedestrians had to walk along that street. Certainly, it was for the jury to say whether, as a result of the city's negligence, pedestrians were reasonably liable to walk in the street where they might be injured by automobiles."

See also *Marsh* v. *City of Sacramento,* 127 Cal.App.2d 721, 724 [274 P.2d 434], where the court said:

" '. . . The city is under a duty to keep sidewalks in safe condition, it is directly liable to pedestrians for failure to correct a dangerous condition of which it had notice, and it is not relieved of its responsibility in this regard merely because the condition was created or maintained by a property owner who might also be liable to pedestrians for injuries resulting therefrom.' "

In *Randolph* v. *Hunt,* 41 Cal.App. 739, 743 [183 P. 358], it was said:

"It is, of course, true that a pedestrian has the right to use all parts of a road or street, being chargeable with the exercise of a reasonable degree of care to be determined under all the circumstances of the case."

Under these authorities, it appears that the jury was justified in believing that the manner in which defendant's street was being maintained over the period in question constituted negligence and that this negligence was a proximate cause of plaintiff's injuries.

The next point is that the court committed prejudicial error in instructing the jury concerning the duties and responsibilities of the county under the Public Liability Act, which instruction was patterned after California Jury Instructions Civil Number 219-B and was used in *Rose* v. *County of Orange,* 94 Cal.App.2d 688, 693 [211 P.2d 45]. The court,

in this instruction, restated the provisions of section 53051, *supra,* and said:

"In respect to a public street, the dangerous condition referred to in the law just stated does not have to be within the street itself to impose a duty upon the County.

"If a condition exists at such proximity to the street as to constitute a direct menace to travel within the street and a danger to persons lawfully using it, even if that condition was not created by the County, and even if it is beyond the County's control, it is the duty of the County, whose street it is, upon receiving notice of the condition to give reasonably adequate warning of the dangerous condition to persons lawfully using the street and to take such protective [and] remedial measures as may be reasonably practical for the safety of such persons."

Defendant claimed that these latter paragraphs were erroneous and prejudicial and not authorized under the act; that the instructions could have been construed by the jury to refer to either the condition giving rise to the flow of water, which, in its course to the sea, crossed the highway, or to the plank laid across the stream at the side of the pavement, or it could have been construed to have referred to both of these conditions; that the jury was told that the defendant county was under a duty not only to give warning of the existence of the stream and the plank, but to *remedy* the stream and plank, and that this virtually amounted to directing a verdict for the plaintiff. (Citing *Lewis* v. *County of Contra Costa,* 130 Cal.App.2d 176 [278 P.2d 756] ; *Mercado* v. *City of Pasadena,* 176 Cal.App.2d 28 [1 Cal.Rptr. 134].

The court then gave the following instruction:

"If you should find from the evidence that there was a long continued existence of the dangerous condition which plaintiff claims caused him injury, that fact will support an inference that the person or persons having authority to remedy the condition had constructive notice thereof."

The argument in respect to this last instruction is that the court characterized the condition as a "dangerous" condition and thus the jury, in addition to being instructed that it was incumbent on the county to give warning of and to correct the condition or conditions beyond the county's control, was further told that the condition under consideration was in fact dangerous. A somewhat similar instruction, as here given, was held to be proper under the facts stated in *Rose* v.

*County of Orange, supra,* 94 Cal.App.2d 688. The circumstances in the instant case are factually different from that case, and there is no evidence here that the proximate cause of the accident was a dangerous condition not existing in the street itself. Here, the evidence indicates that a dangerous or defective condition of the street itself was, in part, a proximate cause of the accident and that this condition was known to defendant county. If the dangerous or defective condition was in the street itself, the same general rule of liability would apply. We feel that no prejudicial error resulted in this respect.

The next instruction did not characterize the condition as a "dangerous condition" when all instructions given were considered in connection with it. Previously the court instructed the jury that it must first find that a dangerous condition did exist. No error thus appears.

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.